UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| Amir H. Sanjari, | )  Civil Case No.  05 – 11723 RCL |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | )  **AMENDED COMPLAINT** |
| | ) |
| ALISON GRATZOL | ) |
| JOHN GRATZOL | ) |
| MAX K. WALKER, JR., ESQ. | )  **JURY TRIAL DEMANDED** |
| LOU ANN TODD | ) |
| ELKHART SUPERIOR COURT 5 OF | ) |
| STATE OF INDIANA | ) |
| JUDGE REX L. REED | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff, Amir H. Sanjari, the undersigned, for his Amended Complaint,

alleges as follows:

AMENDED COMPLAINT

--      The Plaintiff filed his original Complaint on August 19, 2005.

--      The changes resulting in this Amended Complaint pertain to the name of

the Defendant ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA (referred to

as Superior Courts of the State of Indiana in the original Complaint) and all the Judges

and Special Judges acting in its name and in its behalf who perpetrated the violations

against the Plaintiff. This Amended Complaint also includes explicit addition of Judge

REX L. REED's name herein who has been presiding over the Indiana State case under

the aegis of the ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA during the

past two (2) years (or more). He was one of the subjects (i.e. Indiana State Superior

1

Courts) of the original Complaint who perpetrated many or all of the violations attributed therein to State of Indiana Superior Courts. REX REED, as well as Attorney General of State of Indiana, each received a copy of the summons and the original Complaint on August 22, 2005, served upon them by the Plaintiff via U.S. Certified mail (copies of certificates on file).

--      The Plaintiff files this Amended Complaint in accordance with, but not limited to, Rule 15 and any other relevant Rule(s) of the F.R. Civ. P..

## PRELIMINARY STATEMENT

1.      This action is brought pursuant to 28 U.S.C. §§1331,1332,1343,1367; 42 U.S.C.§§1981, 1983, 1985(3), 1988, the First Amendment, Fourth Amendment, Ninth Amendment and Fourteenth Amendment.

2.      This is not a Domestic Relations action. It is about fraud, deception, racketeering, violations of federally protected fundamental rights perpetrated by the Defendants.

3.      Plaintiff, Amir H. Sanjari, seeks injunctive relief, compensatory and punitive damages, and any fees and costs that he is entitled to against the defendants (except Defendants ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA and Judge REX L. REED - see below) acting individually and collectively, and have deprived Plaintiff of his fundamentally secured rights under the Federal Constitution.

4.      Plaintiff, Amir H. Sanjari, seeks only injunctive relief and declaratory relief against the ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA and Judge REX REED for aiding and abetting the deprivation of Plaintiff's fundamentally

2

secured parental rights guaranteed under the Federal Constitution, as well as being willfully negligent in the enforcement of Plaintiff's fundamentally secured parental rights and for acting with intimidation and oppression against Plaintiff.

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §§1331, 1332 (a)(1-4), 1343 (a)(1-3), 42 U.S.C. §§1983, 1985(3), and 1988, and under the pendent jurisdiction, 28 U.S.C. §1367, of this Court with respect to state law claims.

6.      Venue in this Court is appropriate under 28 U.S.C. §1391 (a), since the alleged violations have been ongoing and have been carried out within, and these claims arose within, the District of Massachusetts.

7.      The Court maintains diversity jurisdiction.  Plaintiff is a citizen of the State of Massachusetts.  Defendants are citizens of the State of Indiana.  The amount in controversy exceeds, exclusive of costs and interest, the sum of $75,000.

## PARTIES

8.      Plaintiff, Amir H. Sanjari, resides at #18 Dale Street, Unit 4-E, Andover, Massachusetts, 01810.  He formerly resided in Indiana and in seeking employment opportunities moved to the states of Pennsylvania, Michigan and Kentucky.  Plaintiff now resides in Massachusetts.  Plaintiff is an Iranian national, British citizen, and American permanent resident.

9.      ALISON GRATZOL is a defendant, and at all times herein resides at 26795 Bridgewater Court, Elkhart, Indiana, 46514, and was acting under color of law, to wit, acts, statutes, ordinances, regulations, practices, customs, and usages of the ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA by and through official court orders directing her as a trustee of the government to comply with effectuating parental rights for the joint custodial Plaintiff parent.

3

10.    JOHN GRATZOL, is the husband of ALISON GRATZOL, and a defendant, and at all times herein resides at 26795 Bridgewater Court, Elkhart, Indiana, 46514, and has acted in concert with ALISON GRATZOL and other defendants to deprive Plaintiff of his fundamentally secured parental rights.

11.    MAX K.WALKER, JR., ESQ., is the attorney for ALISON GRATZOL, whose offices are located at 131 East Franklin Street, Suite 12, Elkhart, Indiana, 46516, and has acted as an officially sworn state court officer and individually in concert with ALISON GRATZOL, and other defendants to deprive Plaintiff of his fundamentally secured parental rights.

12.    LOU ANN TODD is a counselor and "licensed clinical social worker" retained by ALISON GRATZOL, whose offices are located at 1750 Kilbourn Street, Elkhart, Indiana, 46514, and has acted as a quasi government worker (since she is licensed by the state of Indiana) and individually in concert with ALISON GRATZOL, and other defendants to deprive Plaintiff of his fundamentally secured parental rights.

13.    ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA (also herein referred to as Indiana Superior Court) are part of the judicial branch of government for the State of Indiana, and hear cases, make judicial determinations and issue court orders in matrimonial matters involving constitutionally secured parental rights, and have failed herein to follow strict scrutiny standards by not enforcing their own court orders compelling the exercise of parental rights of both parents, thus, creating a gender inequity in violation of the Equal Protection Clause of the Constitution for the United States of America. The State of Indiana maybe represented by STEVE CARTER, Indiana Attorney General, whose offices are located at Office of the Indiana Attorney General, Indiana Government Center South, 302 West Washington Street, Indianapolis, Indiana, 46204. In addition, a copy of this Complaint is also submitted to the ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA located at Courthouse, 315 South Second Street, Elkhart, Indiana 46516.

4

14.    REX L. REED, is a Special Judge presiding over ELKHART SUPERIOR
COURT 5 OF STATE OF INDIANA case, who makes judicial determinations and issue
court orders involving constitutionally secured parental rights, and who has failed herein
to enforce court orders compelling the exercise of parental rights of both parents, thus,
creating a gender inequity in violation of the Equal Protection, as well as violating due
process Clauses of the Constitution for the United States of America. His offices are
located at Courthouse, 121 North Lake Street, Warsaw, Indiana 46580-2785.

## STATEMENT OF THE FACTS

15.    On or about August 1999, Defendant, ALISON GRATZOL, by and
through her court representative, attorney and defendant, MAX K. WALKER, JR., filed
for divorce seeking sole custody of the parties' two minor children herein referred to by
their initials, AFS, now 16 years of age, and MRS, now 12 years of age.

16.    At the time of the filing by Defendants, all parties lived and worked in
Elkhart, Indiana. Defendant attorney, MAX WALKER, filed the divorce action in
Goshen, Indiana, in the court of Superior Court Judge Terry Shewmaker.

17.    Neither WALKER or the Judge ever disclosed they had a conflict of
interest that they had been law partners up until Shewmaker became a Judge of the
Superior Court.

18.    Approximately one (1) year later, around August of 2000, Plaintiff Sanjari
uncovered this conflict of interest. But, only after Judge Shewmaker had made a number
of gender discriminatory and prejudicial decisions regarding custody, visitation, support
and maintenance against Plaintiff and in favor of defendant ALISON GRATZOL.

19.    Defendant MAX WALKER was a former Elkhart County Deputy
Prosecutor, and brutally assaulted a woman friend and her minor (9 years old at the time)
daughter. Upon hospitalization, the woman filed a criminal complaint against WALKER.

5

The evidence somehow disappeared and got lost. WALKER got away with a nominal suspension of his law license.

20.     As can be seen by Defendant WALKER'S behavior, he has used his position to corruptly influence and misuse the court process to his advantage and to the deprivation of Plaintiff's fundamentally secured rights. If WALKER has done this to Plaintiff, he has done it to dozens of others.

21.     Plaintiff contested Defendant ALISON GRATZOL'S sole custody demand. Defendant agreed with Plaintiff to equal shared (joint legal and physical) custody of the children. Plaintiff was unfairly forced to pay inordinate and excessive amount of child support ($221.00 per week) to Defendant even though both parties were making almost identical income and had equal custody (Plaintiff, $1,162.80 per week; Defendant $1,153.85 per week).

22.     In 2000, Rita Parsons was appointed as Guardian Ad Litem for the children. It was later discovered that Ms. Parsons is a friend of MAX WALKER and Judge Shewmaker.

23.     In August of 2000, after a change of judges on protest by Plaintiff, Special Judge David Denton presided over the case. This was another friend and associate of MAX WALKER. During the proceedings involving the children, MAX WALKER, specifically and explicitly stated in court that he didn't give a "fuck" about the children because the mother (his client) had control of them. WALKER was never admonished by any Court or administrative disciplinary agency for this horrendous outburst.

24.     On August 23, 2000 the Superior Court issued the final divorce decree. Both parties, Sanjari and ALISON GRATZOL (f/k/a Sanjari), shared equal physical and legal custody of the children. **EXHIBIT #1**--Indiana Decree of Dissolution.

25.     Soon thereafter, Defendant JOHN GRATZOL, moved into the marital home.

6

26.     At this time, Defendants ALISON (nee Sanjari) AND JOHN GRATZOL set about on their willfully malicious campaign to alienate the oldest minor child, AFS, against Plaintiff father.

27.     On or about January 2001, AFS constantly complains to Plaintiff father of severe headaches, anxiety and mood swings whenever she is at Defendants' home. Plaintiff took AFS to the doctor. She was prescribed Zoloft by MABLE BLUNK, a pediatrician in Elkhart, Indiana. Upon being informed of this prescription, ALISON GRATZOL flew into a rage calling the Plaintiff "fucking ....", which was heard by the minor child. This was because the psychological and mental abuse that Defendants were subjecting the children to in the home, as part of the campaign to alienate the children from the father, was now being exposed.

28.     ALISON GRATZOL refused to allow AFS her medication. She then contacted MABLE BLUNK and had her inexplacably withdraw the medicine (Zoloft) from the minor child.

29.     The child's emotional and psychological condition deteriorated. Plaintiff took the child to prominent psychologists in Indiana.

30.     In June of 2001 Plaintiff was about to take the two children to England for a month vacation that had been planned many months earlier. A few days prior to departure, Defendants ALISON GRATZOL and MAX WALKER got an ex parte court order to freeze and garnish Plaintiff's salary and bank accounts. They had the sheriff impound Plaintiff's car on the day Plaintiff and the children left for England. A body attachment was also issued against Plaintiff.

31.     While in England, in July 2001, Plaintiff received letters from the Elkhart County sheriff's department informing him of the impound and the body attachment against him.

32.     On July 12, 2001, with the children back in Indiana, Defendants GRATZOL and WALKER filed an ex parte petition for sole custody of the minor

7

children, falsely and fraudulently alleging that Plaintiff would not be returning to the
United States. This constituted malicious use or misuse of the court process and to
defraud Plaintiff out of his fundamentally secured rights, as well as to defraud the courts.

33.     These acts constituted a blatant fraud and constituted a conspiracy to
alienate the children from their father.

34.     The Elkhart County Superior Court went along with this conspiracy by
granting said ex parte orders without appearance by Plaintiff father. Defendants made
false and fraudulent allegations to defraud Plaintiff as well as the courts. This was done
by Defendants in a scheme to appropriate sole custody of the parties' children through
fraud, deception, trick, artifice and kidnapping (which is a federal offense and state
offense as defined by Indiana Criminal Code).

35.     Defendant MAX WALKER perpetrated frauds, false allegations, false
swearing on court and official documents, and aided and abetted in a kidnapping scheme
in violation of the Indiana Criminal Code. This is sharp practice and barratry which is
also a crime. Later in 2005, WALKER committed perjury and false statement to the U.S.
7th Circuit Court of Appeals.

36.     In January 2002, an Indiana court hearing was set for custody
determination and the reinstatement of Plaintiff's equal custody rights. Prior to the
hearing, Plaintiff father requested parental access to his children. Defendant ALISON
GRATZOL refused to allow access, which is a constitutional violation of the highest
magnitude.

37.     After the court hearing on January 25, 2002, Plaintiff was allowed to see
the children. What he found out about the children during his parenting time shocks the
conscience. His oldest daughter, AFS, was committing self-mutilation because of the
child abuse she was suffering at the hands of Defendants ALISON and JOHN
GRATZOL. Defendant ALISON GRATZOL would not allow the father access to the

8

children before the hearing because it would have significantly affected the outcome of the hearing.

      38.    Plaintiff father uncovered that AFS was self- mutilating and cutting herself in the mother's home because she couldn't stand the child abuse being perpetrated against her by the mother and step-father.

      39.    Defendant mother was aware of the self-mutilation but did absolutely nothing to stop it. The mother's inaction and indifference resulted in severe psychological deterioration of the oldest daughter's condition, violating the fundamentally secured rights of the oldest daughter and Plaintiff. The inaction by Defendant mother caused Plaintiff and his oldest daughter emotional trauma and pain.

      40.    After Plaintiff father brought AFS' self-mutilation to the attention of the school, the court, and other relevant agencies, exposing the Defendant ALISON GRATZOL's inaction (vis-a-vis AFS' self-mutilation), the Defendant took AFS to see MABLE BLUNK, who again (a year later) prescribed Zoloft, the very same medicine that she had prescribed and then, at the behest of the Defendant ALISON GRATZOL, withdrawn a year earlier. Only this time the condition of AFS had significantly deteriorated.

      41.    After ALISON GRATZOL's negligent inaction was exposed, she took AFS to see LOU ANN TODD, a like-minded counselor / "clinical social worker" ostensibly on the basis of referral by MABLE BLUNK.

      42.    On February 4, 2002, Defendants GRATZOL and MAX WALKER fraudulently obtained a court order granting Plaintiff parenting time through a schedule that significantly reduced his fundamentally secured parental rights.

      43.    Said parenting schedule is as follows: Father has children based upon Indiana Parenting Time Guidelines, including the second weekend of each month from Friday at 6:00 p.m., or other times as agreed by the parents, until Sunday evening at 8:00 p.m. or other times as agreed. In addition, Plaintiff father was given on holidays pursuant

9

to the Indiana Parenting Time Guidelines, which included seven (7) weeks of summer vacation. The Plaintiff father was also granted 2 telephone visitations with the children on two evenings per week.

      44.     The parental alienation and parenting time interference by Defendants ALISON and JOHN GRATZOL began immediately. The parental access interference included manipulating the children not to be available to talk with the father for telephonic visitation, and / or refusing to allow the father to talk to the children when he called and the Defendants answered the phone, and / or JOHN GRATZOL taunting and being abusive to the Plaintiff on the phone. Also, every time Plaintiff father would call, it always seemed that the children were eating or about to eat dinner and couldn't talk--no matter what time the father called.

      45.     The parental alienation continues up to the time of this writing. The GRATZOL Defendants have been held in contempt by the Indiana courts for this interference with parental rights, yet the interference and alienation continues. Indeed, they have been intensifying these interference and violations to the point of extending the endangerment to the younger minor child now.

      46.     Defendant JOHN GRATZOL was found guilty of interference for calling Plaintiff father a "son of a bitch" in front of the children, and for refusing to allow the children to talk to their father on the telephone.

There have been many occasions on which the Defendant JOHN GRATZOL used denigrating, abusive and profane language against the Plaintiff father both on the phone and in person in the presence and / or hearing distance of the Plaintiff's minor children.

      47.     Defendant JOHN GRATZOL has specifically stated that it was his and Defendant ALISON GRATZOL'S intentions to "get you [the father] out of the children's lives". However, the Defendants have no compunction about receiving Plaintiff father's financial child support payments. Depriving the male parent of his fundamentally

10

secured parental rights, while extorting child support from him is criminal fraud, extortion, kidnapping for profit, grand theft, theft by deception, and other criminal acts.

48.      Defendant MAX WALKER has perpetrated harassment and terroristic threats, as well as extortion, through the U.S. Mails in violation of federal criminal code Title 18 U.S.C. §1341, as well as perpetrating fraud and intimidation to extort monies from Plaintiff through the U.S. Mails.

49.      The role of Defendant WALKER has gone beyond one of zealous representation of his client. On or about February 2002, WALKER stated in a courtroom conversation with Defendants ALISON and JOHN GRATZOL that they would indoctrinate the minor children to "become like us [the Defendants], ...[and] sound like us [the Defendants], rather than like their British / Mid-Eastern father.

50.      During the period from June-August 2002 the children spent seven (7) weeks with the father, who was living in Pittsburgh, Pennsylvania at the time because of employment opportunities. Prior to the girls going to see their father during this vacation, Defendant mother tried to manipulate the oldest daughter, AFS, into not going to see her father.

51.      During the time the children were spending vacation with their father, Defendants ALISON and JOHN GRATZOL would constantly telephone the children, inciting the oldest, AFS, into rebellion, abusive behavior towards Plaintiff and shouting obscenities. Defendants' aim was to bring about unhappiness and an unpleasant experience for the children while they were with Plaintiff.

52.      On August 8, 2002 the ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA ordered the Defendant mother to transport the children to and from their mother's residence to the transfer location which was the half-way point of the trip. The Court also ordered Defendant mother to communicate with Plaintiff on matters concerning the children. Defendant mother has violated these court orders, without retribution, numerous times.

11

53.     In September 2002, the youngest daughter, MRS, made her wishes known
to Plaintiff father that she no longer could stand the psychological and emotional torture
and abuse she suffered at the hands of her mother and step-father. That same month,
Plaintiff filed a petition to modify custody to gain sole custody of the children and
provide proper treatment, safety, education and care for them since Defendant mother and
Defendant step-father have proven themselves to be unfit parents.

54.     The hearing for the custody modification was set down for October 2002.
Due to the manipulations, influence peddling with the judge, and obstruction of justice
caused by Defendant WALKER, no hearing on the matter of custody has been conducted
to this day.

55.     The ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA and
Judge REX REED have abdicated their responsibility to protect the safety, happiness and
welfare of Plaintiff's two children. They are aiding and abetting in the malicious and
willful behavior of the other Defendants, and have negligently allowed Plaintiff's
fundamentally secured rights to be compromised and essentially terminated with respect
to the oldest daughter.

56.     Although Plaintiff immediately and repeatedly informed the Indiana court
of AFS' repeated self-mutilations in the Defendant mother's  house, the court never took
any meaningful or serious action to safeguard the safety of AFS, or that of MRS for that
matter. Throughout the process AFS continued to self-mutilate while her emotional and
psychological disposition deteriorated with the knowledge of the ELKHART SUPERIOR
COURT 5 OF STATE OF INDIANA and REX REED, hence leaving no excuse for their
negligent inaction.

57.     Defendant GRATZOL'S ongoing campaign of parental alienation
continues leading the oldest daughter to turn against her father, showing hatred, abuse and
profanity towards him. This has resulted in severe parental alienation which is a
consitutional and criminal violation. This parental alienation is a direct violation of

12

Plaintiff father's First, Ninth and Fourteenth Amendment Rights to associate with his children and to the care, company and nurture of his children. The children's safety has been compromised by the ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA's and REX REED's willingness to allow these violations of Plaintiff's fundamentally secured rights.

58.     During October 2002, on a parenting time weekend, Plaintiff father went to pick up his children at the usual transfer point, Exit 5 on Interstate Route 80/90 in Ohio. Defendant ALISON GRATZOL refused to allow Plaintiff to exercise his parenting access weekend.

59.     Defendant ALISON GRATZOL incited, traumatized and frightened the minor children into not going with their father for the weekend (also AFS' birthday). Plaintiff father asked by-standers to call the Ohio State Police. They arrived later and took an incident report of the situation.

60.     By the Defendant mother's and step-father's acts, commissions and/or omissions, their conduct is designed to create an unpleasant and negative environment for the children while they are with their father. The children would then begin to associate this negative, unpleasant feeling with parenting time with their father, and will no longer want to go see him.

61.     Defendants have instituted this vicious and malicious campaign against the children without regard to the children's emotional, psychological and even physical (e.g., self- mutilation) well-being and safety.    An example being when living in the Defendant mother's house, AFS, then 13, hitched a ride in a stranger's pick-up truck across the state line from Indiana into Michigan. Needless to say this endangered the safety of the minor child herself, as well as causing enormous anxiety and stress to the Plaintiff fatrher upon becoming aware of the incident.

62.     ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA had set a 2-day hearing in February 2003 to consider Plaintiff father's petition for the custody of his

13

two daughters. When the Plaintiff, in a pre-hearing, insisted upon exercising his and his children's federally protected due process rights to subpoena witnesses in the hearing, the Indiana superior court refused the same and vacated the hearing. The superior court, furthermore, threatened the Plaintiff by stating (a matter of record) that if the Plaintiff father insisted upon his due process rights of subpoenaing witnesses, he would lose the case. This is a clear violation of the Plaintiff's, and his children's, federally protected rights by the Indiana superior court.

63.    On April 5, 2003, Defendant ALISON GRATZOL interfered with Plaintiff's parental rights, and violated his parenting time specified in court orders for over seven (7) days. This violates the Indiana Criminal Code and constitutes kidnapping under Indiana statutes.

64.    From May 9-11, 2003, Defendant ALISON GRATZOL, violated Plaintiff's First, Ninth and Fourteenth Amendment parental rights by failing to bring the child(ren) for court-ordered parenting time.

65.    During the Summer of 2003, while the children were spending summer vacation time with Plaintiff father, the Defendants continued their interference with the father's parental rights by telephoning the children and getting them (especially AFS) all upset and hostile towards their father by telling lies about their father and his family.

66.    Defendant mother, ALISON GRATZOL, has refused and failed to present the older child, AFS, for parenting time with Plaintiff over 20 times during the past several years, in violation of state court orders, and in violation of the Plaintiff father's Fourteenth Amendment due process rights and equal protection rights, as well as being in violation of Indiana statutory Parenting Time Guidelines and Indiana Criminal Code.

67.    The child's absences due to the Defendant mother's willful violations of court orders has lasted more than seven (7) days on many occasions. This violates Indiana family code violations (I.C. 31-17-4-4) and Indiana criminal code violations (I.C.

14

35-42-3-4). This is not only condoned, but with all probability, is instigated by Defendant MAX WALKER.

68.     Defendant ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA and Judge REX REED are also liable to Plaintiff because they refuse to enforce their own orders, hold important custody hearings due to obstructionist tactics by Defendant WALKER, and thus, is willfully aiding and abetting in the conspiracy to violate Plaintiff's fundamentally secured First, Ninth and Fourteenth Amendment Rights, not only as a parent, but as a minority.

69.     Often the children are not made aware by Defendants mother and step-father of incoming telephone calls from Plaintiff father. The children are not informed of Plaintiff father's voicemails, messages and e-mails. Telephone set is conveniently switched off. Defendants are deliberately interfering with electronic wire communications, thus, committing electronic wire fraud.

70.     On August 26 and September 2-3, 2003, Defendants mother and step-father blocked telephonic communications between the children and Plaintiff.

71.     On September 12-14, 2003, Defendant mother willfully violated Plaintiff's parental rights by refusing to bring children for court-ordered parenting access time.

72.     On September 13th and 19th, 2003, the GRATZOL Defendants willfully refused to facilitate the Plaintiff father's telephone conversations with the children, thereby violating the Plaintiff's Constitutional rights.

73.     On September 20, 2003, after Plaintiff drove 360 miles to Indiana from Pittsburgh, PA, Defendant ALISON GRATZOL, willfully refused to present the Plaintiff's oldest daughter for parenting time as she was required to do by the Indiana Parenting Time Guidelines. Defendant also willfully denied telephonic access to his daughter. Plaintiff father had to obtain the services of the Elkhart County Sheriff's Department to enforce the court ordered parenting time.

The reason for the trip was to check on the health of AFS and for any signs of self-

15

mutilation which had previously been covered up by the Defendant mother.

74. The Defendants' violations of the Plaintiff's federally protected parenting time, deprived the father of opportunity to check on the safety and well-being of his children. Such violations caused the children and the father additional stress and anxiety.

75. On October 10-12th, 2003, Defendant mother willfully denied Plaintiff parenting time with his children.

76. On November 5, 2003 the GRATZOL Defendants willfully interfered with Plaintiff's parental rights and blocked telephonic access to the children and prevented personal visit with the child (AFS).

77. On November 14th-16th, 2003, Defendant mother willfully refused to bring the children to the father for parenting time access.

78. From December 12th - 14th, 2003, and again from December 26, 2003-January 4, 2004, Defendant mother willfully refused Plaintiff parenting time with his child for over seven (7) days, thus, committing a criminal violation of the Indiana Code, constituting kidnapping, which is both a state and federal crime.

79. On February 20-22, 2004 Defendant ALISON GRATZOL willfully refused to bring the child to Plaintiff for court ordered parenting time.

80. On March 19-21, 2004, Defendant ALISON GRATZOL willfully refused to bring the child (AFS) to the transfer point to Plaintiff for court ordered parenting time.

81. On April 9-11, 2004, Defendant ALISON GRATZOL willfully refused to bring the child to the transfer point to Plaintiff for court ordered parenting time.

82. On May 7-9, 2004, Defendant ALISON GRATZOL willfully refused to bring the child (AFS) to the transfer point to Plaintiff for court ordered parenting time.

83. On May 28-31, 2004, Defendant ALISON GRATZOL willfully refused to bring the children to Plaintiff for court ordered parenting time.

84. On June 18-20, 2004, Defendant ALISON GRATZOL willfully refused to bring the children to Plaintiff for court ordered parenting time.

16

85.     On July 2, 2004, Defendant ALISON GRATZOL willfully refused to
bring the child (AFS) to Plaintiff for court ordered summer vacation time. This was a
violation of the Indiana Criminal Code regarding kidnapping, since it was over 7 days
that Defendant willfully withheld the child from their father.

86. On September 10-12, 2004, Defendant ALISON GRATZOL willfully refused
to bring the child to Plaintiff for court ordered parenting time.

87.     On October 8-10, 2004, Defendant ALISON GRATZOL willfully refused
to bring the child to Plaintiff for court ordered parenting/birthday time that Plaintiff father
was entitled to spend with the children.

88.     On November 12-14, 2004, Defendant ALISON GRATZOL willfully
refused to bring the child to Plaintiff for court ordered parenting time.

89.     On November 24-28, 2004, Defendant ALISON GRATZOL willfully
refused to bring the child to Plaintiff for court ordered Thanksgiving holiday.

90.     On December 10-12, 2004, Defendant ALISON GRATZOL willfully
refused to bring the child to Plaintiff for court ordered parenting time.

91.     On December 27, 2004-January 2, 2005, Defendant ALISON GRATZOL
willfully refused to bring the child to Plaintiff for court ordered Christmas/New Year
holiday vacation. This was a violation of the Indiana Criminal Code regarding
kidnapping, since it was over 7 days that Defendant willfully withheld the child (AFS)
from the father.

92.     On January 14-16, 2005, Defendant ALISON GRATZOL willfully refused
to bring the child to Plaintiff for court ordered parenting time.

93.     On February 5, 2005, Defendant ALISON GRATZOL willfully refused to
bring the children to Plaintiff for court ordered parenting time.

94.     On February 11-13, 2005, Defendant ALISON GRATZOL willfully
refused to bring the children to Plaintiff for court ordered parenting time.

17

95.    At all times above, the father either lived in Pennsylvania, Michigan or Kentucky, and the Defendant mother lived in Indiana. Diversity jurisdiction existed at the time and continues to exist since Plaintiff now resides in Massachusetts.

96.    Plaintiff father will provide ample recorded evidence regarding the Defendants' (ALISON GRATZOL and JOHN GRATZOL) blatant and willful violations of Plaintiff's parental rights and parenting time, as well as other violations by the Defendants including making harassing inter-state calls to the Plaintiff.

97.    On March 11-13, 2005, Defendant ALISON GRATZOL willfully refused to bring the child to Plaintiff for court ordered parenting time.

98.    On April 01-10, 2005, Defendant ALISON GRATZOL willfully refused to bring the child (AFS) to Plaintiff for court ordered Spring Break holiday. This was a violation of the Indiana Criminal Code regarding kidnapping, since it was for at least 7 days that Defendant willfully withheld the child from the father.

Furthermore, Defendants ALISON GRATZOL and JOHN GRATZOL refused, at the transfer point in South Bend, Indiana, to allow Plaintiff to take MRS for Spring Break as he was entitled to. In the presence of the child (MRS), JOHN GRATZOL and ALISON GRATZOL denigrated the Plaintiff, and JOHN GRATZOL used abusive language against the Plaintiff father. JOHN GRATZOL further threatened the father and refused to allow MRS to go with the father for parenting time unless the father yeilded to the Defendant's demands. Plaintiff called the South Bend police, who upon arrival and investigation resolved the situation, agreeing with the Plaintiff that Defendants JOHN GRATZOL and ALISON GRATZOL were in violations.

Such incidents are contrived by the Defendants ALISON GRATZOL and her husband JOHN GRATZOL to create stress, anxiety, unhappiness and trauma for both the Plaintiff father and his children so as to emotionally deter the children from wanting to see or spend time with their father, i.e. Alienating them from their father. This tactic of the Defendants has already worked with the child AFS, causing trauma, stress, alienation and

18

anxiety. Now they are embarking upon the same course of action vis-a-vis the younger minor child (MRS).

99.    On May 20-22, 2005, Defendant ALISON GRATZOL willfully refused to bring the child (AFS) to Plaintiff for court ordered parenting time.

100.    On June 17- July 31, 2005, Defendant ALISON GRATZOL willfully refused to bring the child (AFS) to Plaintiff for court ordered summer vacation time. This was a violation of the Indiana Criminal Code regarding kidnapping, since it was at least 7 days that Defendant willfully withheld the child from the father.

101.    At all times, irrespective of which state Plaintiff resided in, the Defendants have continued their willful, malicious and deliberate parental alienation campaign against Plaintiff and the children. There is no reason to believe that they cease and desist from such violations. In fact, Defendants ALISON GRATZOL and JOHN GRATZOL just denied Plaintiff Sanjari summer vacation for 2005 with his child (AFS).

102.    The Defendants ALISON GRATZOL and JOHN GRATZOL have become emboldened in their violations by the comfort that Indiana superior court and Judge REX REED have not, do not, and evidently will not act to either punish them, or enforce the court's own orders. This makes the Defendants ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA and Judge REX REED culpable and responsible for the foregoing violations.

As recently as only August 18, 2005, Indiana superior court and Judge REX REED yet again violated the Plaintiff's federally protected due process and equal protection rights by denying the Plaintiff and his scientific expert access to the psychological raw data for evaluation required in order that the Plaintiff may present his case effectively in the Indiana state court. This denial by the Indiana superior court and Judge REED not only violates the Plaintiff's and his children's due process and equal protection rights, but it is also in direct violation of the Indiana Codes IC 31-17-2-12 and IC 16-39-2-9 . The Indiana superior court in the same hearing on August 18, 2005, showed unduely (in

19

violation of the above Indiana Code) favorable consideration to the Defendant MAX
WALKER's wishes. Such bias and prejudice by the Indiana Court and Judge REED
against the Plaintiff is not an isolated occurrence. See **EXHIBIT #2.A & 2.B** -- signed
and notarized Affidavits by two independent observers testifying to the bias and prejudice
by Judge REX REED and Indiana Court against the Plaintiff.

## FIRST CLAIM FOR RELIEF--42 U.S.C. §1983 FIRST AMENDMENT;

## 42 U.S.C. §1985(3) CONSPIRACY TO VIOLATE RIGHTS

103.    Plaintiff repeats and realleges each allegation contained in paragraphs 1-
102 as set forth herein.

104.    Defendants ALISON GRATZOL, JOHN GRATZOL and MAX
WALKER, ESQ., in concert with Defendants ELKHART SUPERIOR COURT 5 OF
STATE OF INDIANA and Judge REX REED perniciously and with official force and
effect deprived Plaintiff of his parental rights, specifically court ordered parenting time,
with his daughters, and have contributed to the campaign of parental alienation of the
children against Plaintiff father. The Due Process Clause of the Fourteenth Amendment
requires that severance in the parent-child relationship caused can only occur with
rigorous protections for individual liberty interests at stake. The state has acted
complicitly, negligently, and without cause or justification, in allowing the interference of
Plaintiff's liberty interests by the other Defendants.

105.    All Defendants could have prevented said loss of time, but instead chose
not to do so. In fact, Defendants have interfered with Plaintiff's parent-child relationship
based on his gender and racial status.

106.    Defendants acted under color of state law and under color of fraud and in
their individual and official capacities. Defendants SUPERIOR COURT and MAX
WALKER have acted beyond the scope of their authority and jurisdiction, by acting
without authority of law, with negligence, and in abuse of their powers, and all said

20

Defendants have acted willfully, knowingly, negligently and wantonly, and within the scope of their employment and fiduciary trust positions, and with specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. §1983, and by the First Amendment to the United States Constitution which grants the Right of Association with one's children. Defendant ALISON GRATZOL acted under color of state law as trustee of the children pursuant to court order and who has now violated that trust. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof through a campaign of parental alienation), and failed to prevent on another from doing so, in violation of 42 U.S.C. §§ 1983 and 1985(3).

107.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff has suffered and continues to suffer psychological pain (post traumatic stress disorder), suffering and mental anguish, as well as economic harm.

## SECOND CLAIM FOR RELIEF--

### 42 U.S.C. §1983 FIRST, NINTH & FOURTEENTH AMNEDMENTS

108.    Plaintiff repeats and realleges each allegation contained in paragraphs 1-107 as set forth herein.

109.    Plaintiff's right to associate with his children is guaranteed by the First Amendment as incorporated in the Fourteenth Amendment, or which is embodied in the concept of "liberty" as that word is used in the Due Process Clause of the Fourteenth Amendment and Equal Protection Clause of the Fourteenth Amendment, the Ninth Amendment, and Fifth Amendment.

110.    All Defendants acted in concert to abridge Plaintiff's state and federal rights to enjoy equal parenting time with his daughters by instituting an unlawful and unconstitutional campaign of interference with Plaintiff's parental rights and subjecting him and his children to parental alienation, psychological torture and kidnapping.

21

111.    All Defendants acted under color of state law and under color of fraud in their individual and official capacities and within the scope of their employment or fiduciary trust relationships. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, in abuse of their powers, and willfully done with negligence, and within the scope of their employment and fiduciary trust positions, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. §1983, and by the First and Fourteenth Amendments to the United States Constitution. Pursuant to 42 U.S.C. §§1983 and 1985(3), Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof, in an unlawful and unconstitutional campaign of parental alienation against the Plaintiff and the children), and failed to prevent one another from doing so.

112.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff has suffered and continues to suffer psychological pain (post traumatic stress disorder), suffering and mental anguish as well as economic harm.

### THIRD CLAIM FOR RELIEF--

### VIOLATIONS OF 42 U.S.C §§1981, 1983, 1985(3) and 28 U.S.C. §1343

113.    Plaintiff repeats and realleges each allegation contained in paragraphs 1-112 as set forth herein.

114.    Plaintiff has been subjected to gender and racial discrimination because of his heritage and nationality as an Iranian national, even though he is a naturalized British citizen and U.S. permanent resident. Defendants have acted under color of state law and color of fraud and in their individual and official capacities, and within the scope of their employment and fiduciary trust positions, to discriminate against Plaintiff on the basis of his gender and race, in abuse of their powers, in order to deprive him of his relationship with his daughters, and said Defendants acted willfully, knowingly, wantonly, and with

22

the specific intent to deprive Plaintiff in violation of his constitutional rights secured by 42 U.S.C. §§1981, 1983, 1985(3) and 28 U.S.C. §1343. Defendants have conspired among themselves to perpetrate acts of racial and gender discrimination against Plaintiff, and have failed to prevent one another from doing so.

115.    As a direct and proximate cause of the racial and gender discrimination, misconduct, criminal behavior, negligence, and abuse of authority detailed above, Plaintiff has suffered and continues to suffer psychological pain (post traumatic stress disorder), suffering and mental anguish as well as economic harm.

## FOURTH CLAIM FOR RELIEF--MASSACHUSETTS STATE CONSTITUTION

116.    Plaintiff repeats and realleges each allegation contained in paragraphs 1-114 as set forth herein.

117.    By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which equal parenting time is quashed through unlawful and unconstitutional campaigns of parental alienation and severe interference with constitutionally protected parental rights, replaced by "sole" custodial arrangements, the negligence of the ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA and Judge REX REED to curb these abusive and criminal behaviors, and the malicious use or misuse of process to effectuate said plan, Defendants continue to violate Plaintiff's civil rights.

118.    Defendants have deprived and will continue to deprive Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the State of Massachusetts and the State of Indiana, in violation of the Massachusetts Constitution with respect to individual rights. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

119.    Defendants acted under color of state law and under color of fraud and in their individual and official capacities and within the scope of their employment and fiduciary trust positions. Said acts by said Defendants were (and are) beyond the scope of their jurisdiction, without authority of law, with negligence, and in abuse of their powers, and said Defendants acted willfully, knowingly, wantonly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. §1983, and by the Massachusetts Constitution and the Indiana Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof in a campaign of interference and violation of parental rights and in a campaign of parental alienation), and failed to prevent one another from doing so.

120.    As a direct and proximate result of the misconduct, negligence and abuse of authority detailed above, Plaintiff has suffered and continues to suffer psychological pain (post traumatic stress disorder), suffering and mental anguish as well as economic harm.

121.    Defendant LOU ANN TODD has violated the Constitution of Massachusetts because she has been licensed by the state (Indiana), which makes her a quasi-government worker, i.e. a government official. Therefore, she is in violation of the Constitution as a result of violation of her license. Hence, federal intervention comes in.

122.    Defendant LOU ANN TODD has interfered with the Plaintiff's parental right that is a fundamental right protected by the First Amendment and Fourteenth Amendment.

123.    LOU ANN TODD has caused irreparable harm, by telling the child, AFS, that she doesn't need a father, intentional infliction of emotional stress, negligent infliction of emotional distress.

## IRREPARABLE HARM

124.    Plaintiff repeats and realleges each allegation contained in paragraphs 1-123 as set forth herein.

24

125. Because of the Defendants' egregious and negligent conduct, the Plaintiff has repeatedly made attempts to enforce his parental rights in the ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA. He has filed numerous court proceedings there only to have them ignored and not litigated. He has incurred excessive legal costs, lost income and has been forced to pay excessive child support for children he is not seeing. Since custody and visitation encompass what is called "parental rights", a total denial of both is equivalent to termination of parental rights. Plaintiff has expended and will continue to expend huge sums of monies in litigation to enforce his parental rights, costs of travel and transportation only to not have his children be at the transfer locations for court ordered parenting time, and costs for his psychological and his childrens' psychological therapy.

126. If Defendants' policies, practices and customs of interfering with custodial arrangements, and waging a campaign/ war of parental alienation against the Plaintiff father, through the malicious use or misuse of the court process, ignoring of court orders knowing that the Indiana Superior Court and Judge REX REED will do nothing to enforce those orders and have negligently and maliciously refused to hold hearings to enforce their own orders, are not enjoined, Plaintiff will be subjected to immediate and ongoing irreparable injury for which no adequate remedy at law exists, in that he will suffer continued violations of his fundamentally secured rights under the First, Fourth (unlawful seizure of children by Defendants), Fifth, Ninth and Fourteenth Amendments to the United States Constitution and the Massachusetts Constitution (Individual Rights) and Indiana Constitution (Individual Rights).

This irreparable injury also includes loss of parenting time with his children that can never be re-gained as time goes on.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

25

127.    Plaintiff repeats and realleges each allegation contained in paragraphs 1-126 as set forth herein.

128.    Defendants intentionally, maliciously, wantonly, willfully and recklessly used and/or misused the court process to manipulate and alienate the children against Plaintiff by criminally restraining them and keeping them from Plaintiff through parenting access interference, discriminated against Plaintiff based on his gender and race, and psychologically and emotionally abusing of the children to turn against Plaintiff father.

129.    That the conduct of Defendants ALISON GRATZOL, JOHN GRATZOL and MAX WALKER, ESQ., as referenced above, was outrageous, wrongful, intolerable, malicious and contrary to the Constitution and laws of the United States, and Constitution and laws of Massachusetts and Indiana.

130.    That as a direct and proximate result of the actions of the above named Defendants, ALISON GRATZOL, JOHN GRATZOL, MAX WALKER, ESQ., and LOU ANN TODD, Plaintiff Amir H. Sanjari, has suffered severe emotional distress, in particular:

        a.    Alienation and/or loss and affection of at least one of his natural children;

        b.    Destruction of the emotional bonding existing between Plaintiff father and his children;

        c.    Nervousness, humiliation, anxiety, emotional distress, pain and suffering, fright, shock, tension, loss of sleep, upset stomach, and post-traumatic stress disorder, all of which has caused Plaintiff financial problems, problems with work, and resulted in a great loss of wages. Plaintiff has merely attempted to rightfully

26

retain his fundamentally secured parental rights to his children.

d.   Denial of social pleasures and companionship of his children.

e.   Medical (and psychological) expenses both past and future.

f.   Loss of earnings and earning capacity.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

131.   Plaintiff repeats and realleges each allegation contained in paragraphs 1-130 as set forth herein.

132.   Defendant ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA, in concert with the other Defendants, had the duty not to interfere with Plaintiff's fundamentally secured rights, and duty not to negatively influence the minds of the children against their natural father.

133.   Defendants ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA and Judge REX REED had a duty to enforce court orders and hold hearings regarding the deprivations of Plaintiff's parental rights, and did not do so. Plaintiff has waited well over two (2) years in trying to get a hearing regarding custody matters. The Defendant ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA has willfully and negligently failed or refused to conduct said hearings in a timely manner and for the safety and protection of the Plaintiff's children.

134.   The conduct of Defendant SUPERIOR COURTS OF THE STATE OF INDIANA as referenced above, was and is outrageous, wrongful, intolerable, cruel and contrary to the Constitutions of the United States, Indiana and Massachusetts (pursuant to the Full Faith and Credit Clause of the U.S. Constitution), and the actions, or inactions, were a reckless and negligent disregard of Plaintiff's fundamentally secured rights, and a reckless and negligent disregard of the Plaintiff's children's safety and well-being.

135.   That as a direct and proximate result of the actions of the above named Defendants, ALISON GRATZOL, JOHN GRATZOL MAX WALKER, ESQ., and LOU

27

ANN TODD, Plaintiff Amir H. Sanjari, has suffered severe emotional distress, in
particular:

        a.      Alienation and/or loss and affection of at least one of his natural
                children;

        b.      Destruction of the emotional bonding existing between Plaintiff
                father and his children;

        c.      Nervousness, humiliation, anxiety, emotional
                distress, pain and suffering, fright, shock,
                tension, loss of sleep, upset stomach, and
                post-traumatic stress disorder, all of which
                has caused Plaintiff financial problems, problems with work, and
                resulted in a great loss of wages.
                Plaintiff has merely attempted to rightfully
                retain his fundamentally secured parental rights to his children.

        d.      Denial of social pleasures and companionship of his children.

        e.      Medical (and psychological) expenses both past and future.

        f.      Loss of earnings and earning capacity.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff prays for a judgment against the Defendants as follows:

1.     Granting Plaintiff a judgment declaring that the Defendants' actions of
taking away Plaintiff's parenting time, and instituting a campaign of parental alienation
against him, were in violation of Plaintiff's federal constitutional rights and contrary to
Massachusetts law and contrary to Indiana law; and further,

2.     Issuing an Order enjoining Defendants' policies, practices and customs of
gerrymandering custodial arrangements of matrimonial litigants by willful violations of
the law, neglecting to enforce laws prohibiting violations of the law regarding parental

rights, willfully setting about a campaign of parental alienation that psychologically and emotionally tortures children and parents, use of intimidation, by coercion, and/or by general lawlessness; and further,

  3.  Issuing an Order enjoining Defendants from manipulating custodial arrangements of matrimonial litigants through negligence, government oppression and abusiveness, coercion, intimidation, and general lawlessness; and further

  4.  Granting Plaintiff a judgment directing that his lost parenting time (parental rights) be returned; and further

  5.  Granting Plaintiff preliminary and permanent injunctive relief enjoining Defendants from continuing to violate the Plaintiff's fundamentally secured rights under the aforementioned Amendments to the United States Constitution; and further,

  6.  Granting Plaintiff judgment against each Defendant, individually, jointly and severally, for compensatory damages in the amount of ten million dollars ($10,000,000) or in an amount to be determined at trial; and further,

  7.  Granting Plaintiff judgment against each Defendant, individually, jointly and severally, for exemplary and punitive damages in the amount of ten million dollars ($10,000,000) or in an amount to be determined at trial; and further,

  8.  Awarding Plaintiff reasonable costs and disbursements herein; and further,

  9.  Appointing a competent, effective attorney knowledgeable in Constitutional, criminal and matrimonial law to prosecute Plaintiff's case; and further

  10.  Appointing competent, effective counsel knowledgeable in Constitutional, criminal and matrimonial law to represent the minor children involved; and further,

  11.  Awarding Plaintiff (and the minor children) reasonable attorney's fees pursuant to 42 U.S.C. §1988; and further,

  12.  Granting Plaintiff such other, further and different relief as the Court may deem just, fair and proper.

13.    Plaintiff seeks <u>only</u> injunctive relief and declaratory relief against the
ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA and Judge REX REED for
aiding and abetting the deprivation of Plaintiff's fundamentally secured parental rights
guaranteed under the Federal Constitution, as well as being willfully negligent in the
enforcement of Plaintiff's fundamentally secured parental rights and for acting with
intimidation and oppression against Plaintiff. Plaintiff is not seeking monetary damages
against these two Defendants.

14.    This is <u>not</u> a Domestic Relations action.


### TRIAL BY JURY DEMANDED

Plaintiff demands a Trial by Jury of Twelve on all issues so triable.


Dated:  September 08, 2005

_____
Amir H. Sanjari
In propria persona
#18 Dale Street
Unit 4-E
Andover, Massachusetts 01810
(270) 268-3086

30

STATE OF INDIANA        )          IN THE ELKHART CIRCUIT COURT          EXHIBIT 1
                        ) SS:
COUNTY OF ELKHART       )          CAUSE NO. 20001-9908-DR-140

IN RE THE MARRIAGE OF:             DECREE OF DISSOLUTION

ALISON SANJARI

    and

AMIR H. SANJARI

    This matter was submitted to court for trial on August 22, 2000.  The
parties appeared in person and by their respective attorneys, evidence
was heard and the matter taken under advisement.  Having reviewed the
evidence, the court finds:

    1.    The marriage of the parties is irretrievably broken and the
          same should be, and hereby is, dissolved and set aside and the
          parties returned to the status of single persons.

    2.    The parties are awarded the joint legal and physical custody of
          the minor children, to-wit: Aimee Sanjari, date of birth October
          8, 1988, and Melodie Sanjari, date of birth September 11, 1992.
          The court is of the opinion that the parties are able to agree on
          periods of custody for each parent which are approximately
          equal in time and that no order for visitation will be entered.

    3.    The only issues on which the parties cannot agree with regard
          to the children are (1) the friendship of Aimee with Megan and
          (2) which school the Sanjari children should attend.  The court
          is convinced each parent has lobbied the children to attend
          the school which is favored by that parent, conduct which is
          not tolerable to the court.

    4.    Based on the evidence presented, it is the order of the court
          that the children continue to attend the Elkhart Community
          Schools.  It is further ordered that the wife continue to
          monitor the contact of Aimee with Megan to insure there is no
          adverse effect on Aimee.

5. The wife filed a petition to modify the order of child support on June 12, 2000, which was not heard until August 22, 2000. Under the applicable rules, the order of support should be retroactive to June 16, 2000, the first Friday after the filing of the petition.

At the time of filing of the petition to secure support, the husband was earning $5,000.00 per month ($1,162.80 per week) from Wayne State University and the wife earned $60,000 per year ($1,153.85 per week) at her employment at Elkhart General Hospital. The wife pays $67.80 per month ($15.76 per week) for health insurance for the children only.

Absent the shared custody of the children and based on the child support guidelines, the support obligation of the husband would be $221.00 per week, after granting the normal 10% credit for visitation (child support worksheet attached as Exhibit 1).

The court, because of the additional time spent with the children over and above the regular guidelines of the court, finds that a deviation from the guidelines is in order and now sets support to be paid by the husband at $175.00 per week beginning on June 16, 2000, and ending September 1, 2000. Beginning September 1, 2000, the husband's income increases to $83,000.00 per year ($1,596.00 per week), increasing the support, by chart, to $268.00 per week. Again, allowing credit for extra visitation, the court sets support to be paid by the husband at $215.00 per week beginning September 8, 2000. (Child support worksheet attached as Exhibit 2).

6. The court orders the husband to pay at least $25.00 each week on any arrears caused by the retroactivity of this order.

7. The parties agreed to a division of personal property and the value of same was not placed in evidence except for the 1992 Lincoln which the finds to have a value of $4,500.00 and which should become the property of the husband.

8. The court is mandated, by statute, to divide property equally (I C 31-15-7-5). The parties disagree on the value of the real estate and the court finds that value to be $90,000.00, and that

the same should be granted to the wife and the wife is ordered to pay the mortgage to Countrywide Mortgage and the home equity loan to Key Bank, totaling $94,764.00 as of the time of trial and wife shall pay the same as they become due and payable and shall hold the husband harmless.

9.     The parties agreed to allow the wife to take the computer and office furniture used by Hi-Tech 2000, Inc., a business owned by the husband, and the court hereby grants said property to the wife at a value of $5,000.00. There was no testimony as to debts of the corporation, but the husband is hereby ordered to hold the wife harmless from any debts incurred by that corporation including any liability for state or federal withholding taxes.

10.    The parties also agreed on a division of the various bank accounts owned by the parties. The wife is hereby granted the following bank accounts: Midland Bank ($1,400.00), Abbey National Building Society ($600.00) and the husband is granted the account at First Source Bank (value unknown). There was an overdraft on a Key Bank checking account which was transferred in part to a credit card account and the wife paid $300.00 toward that obligation and claims credit for said payment. The court finds that the request for credit should be allowed.

11.    The wife also claimed credit for payments made by her from separation to the time of trial and, since the husband did not disclose his income of $5,000.00 per month until the time of the trial and was not required to contribute to the debts, credit for the full payments will be allowed, even though some of the payments may have been interest or late charges. The total payments made by wife:

|  |  |
|---|---|
| Key Bank overdraft | $   300.00 |
| American Express | $ 2,952.00 |
| Citibank | $   669.00 |
| Providian Visa | $ 1,420.00 |
| Home equity | $ 4,058.06 |
| First Card | $   594.29 |
| Total | $ 9,993.12 |

Additionally, the wife claimed credits for a cash advance to husband ($500.00), husband's car insurance ($643.50) and life insurance premiums ($155.87), all of which should be allowed except the life insurance premium which the husband agreed to repay the wife on the date of trial. The husband received the entire 1999 tax refunds with a net value of $3,623.00.

12.    The division of assets and debt as proposed by the parties is:

| Assets | Wife | Husband |
|---|---|---|
| Real estate | $ 90,000.00 | |
| Lincoln | | $ 4,500.00 |
| Hi-Tech assets | $ 3,000.00 | |
| Bank Accounts | | |
|   Midland Bank | $ 1,400.00 | |
|   Abbey National | $ 600.00 | |
|   First Source | | Unknown value |
| Tax refund | | $ 3,623.00 |
|   Total | $ 95,000.00 | $ 8,123.00 |

| Debts | | |
|---|---|---|
| Mortgage | $ 82,764.00 | |
| Home equity | $ 12,000.00 | |
| GE Visa | $ 519.00 | |
| American Express | $ 2,952.00 | |
| Citibank | $ 3,178.00 | |
| Providian Visa | $ 2,825.00 | 0 |
| | $104,238.00 | 0 |

| | | |
|---|---|---|
| Net worth | $ (9,238.00) | $ 8,123.00 |
| Credits | $( 9,993.12) | |
|   Total | $(19,231.12) | $ 8,123.00 |

13.    Ordinarily, the court will not divide a negative situation, but the husband's failure to contribute to payment of marital debts during the separation and his failure to contribute to the support of the children during that time leads the court to the conclusion that the debts should be realigned to equalize the marital property. The court now orders that the wife should pay the following debt obligations and hold the husband

harmless thereon:

| | |
|---|---|
| Mortgage | $82,764.00 |
| Home equity | $12,000.00 |
| First Card | $ 2,629.74 |
| Total | $97,393.74 |

and that the husband should pay the following debt obligations and hold the wife harmless thereon:

| | |
|---|---|
| GE Visa | $ 519.00 |
| American Express | $ 2,952.00 |
| Citibank | $ 3,178.00 |
| Providian Visa | $ 2,825.00 |
| | $ 9,474.00 |

The above division leaves the wife with net assets of a negative ($2,393.00) and the husband with net assets of a negative ($1,351.00).

14. The entire matter is a negative net worth and the court, other than ordering the payment of debt obligations, will not attempt to equalize the negatives.

15. Each party is ordered to execute any deeds or documents of title necessary to carry out the terms of this decree, and upon the failure of either party to execute a required document, the Clerk of the Court is appointed commissioner for the purpose of executing such document on behalf of the non-cooperative party.

16. The court continued the joint legal and physical custody of the children solely based on the testimony of each party that there were no disputes except for the school issue which the court has resolved in this decree. Should the parties have further disputes with regard to the children, the court would entertain and probably grant a motion to terminate the joint legal and physical custody.

JUDGMENT.

David A Denton, Special Judge

Dated: August 23, 2000

Each party shall complete that portion of the worksheet that applies to him or her, sign the form and file it with the court. This worksheet is required in all cases establishing or modifying child support.

IN RE:

CASE NO:
FATHER:
MOTHER:

## CHILD SUPPORT OBLIGATION WORKSHEET

| Children | DOB | Children | DOB |
|---|---|---|---|
| 2 | | | |
| | | | |

| | | FATHER | MOTHER | |
|---|---|---|---|---|
| 1. | WEEKLY GROSS INCOME Subsequent Children Multipliers   (Circle .826 .883 .876 .993 .954) | 1163 | 1154 | |
| A. | Child Support (Court Order for Prior Born Children) | — | — | |
| B. | Child Support (Legal Duty for Prior Born Children) | — | — | |
| C. | Maintenance Paid | — | — | |
| D. | WEEKLY ADJUSTED INCOME (WAI) Line 1 minus 1A, 1B, and 1C | 1163 | 1154 | 2317 |
| 2. | PERCENTAGE SHARE OF TOTAL WAI | 50 % | 50 % | |
| A. | Work-Related Child Care Expenses | | | 0 |
| 3. | COMBINED WEEKLY ADJUSTED INCOME   (Line 1D minus Line 2A) | | | 2317 |
| 4. | BASIC CHILD SUPPORT OBLIGATION   Apply CWAI to Guideline Schedule | | | 423 |
| A. | Work-Related Child Care Expenses | | | 0 |
| B. | Weekly Premium - Children's Portion of Health Insurance only | | | 68 |
| 5. | TOTAL CHILD SUPPORT OBLIGATION   (Line 4 plus 4A and 4B) | | | 491 |
| 6. | PARENTS' CHILD SUPPORT OBLIGATION   (Line 2 times Line 5) | 245.50 | 245.50 | |
| 7. | ADJUSTMENTS [ ] Obligation from Post-Secondary Education Worksheet Line J | + _____ | + _____ | |
| | [ ] Children's Portion of Weekly Health Insurance Premium $ _____   (Will only be credit to the payor) | _____ | 68 | |
| | [✓] Visitation Credit $ _____ | .2450 | _____ | |
| 8. | RECOMMENDED CHILD SUPPORT OBLIGATION | 201.00 | | |

### EXPLAIN ANY DEVIATION FROM GUIDELINE SCHEDULE IF RECOMMENDED.

I affirm under penalties for perjury that the foregoing representations are true.

Father: _____

Dated: _____    Mother: _____

UNINSURED HEALTH CARE EXPENSE CALCULATION
A.   Custodial Parent Annual Obligation (Line 4) _____ x 52 weeks x .06 = $ _____
B.   Balance of Annual Expenses to be Paid: (Line 3) _____ % by Father: _____ % by Mother: _____

Exhibit 1

42

STATE OF INDIANA )                IN THE ELKHART SUPERIOR COURT NO. 5
                 ) SS:
ELKHART COUNTY )                  CAUSE NO. 20D050010DR640

EXHIBIT 2.A

### AFFIDAVIT OF BIAS AND PREJUDICE

Comes now (affiant's name) _Tim Miller_ , of (afffiant's address) _409 Tuenbury Ave , Bristo, IN 46507_ , being duly sworn upon his/her oath, states that (s)he believes the Honorable Rex L. Reed, of Kosciusko Circuit Court, is biased and prejudiced against Dr. Amir H. Sanjari, Respondent in the above captioned case. This prejudice, by extension and consequence, is also perpetrated against Dr. Sanjari's two minor children.

The undersigned arrived at this conclusion by witnessing Special Judge Reed's conduct of the case during a full day's court hearing.

_____

**Tim Miller (AFFIANT)**

### VERIFICATION AND AFFIDAVIT

Before me, the undersigned authority, personally came and appeared the affiant named below, who, being first duly sworn upon oath, stated that she has read the above and foregoing document and knows the contents thereof, and that all statements of fact contained therein are true.

_____

**Tim Miller (AFFIANT)**

Subscribed and sworn to before me, this _13th_ day of July 2004.

_____

**NOTARY PUBLIC**
**Address of notary:**

Denis I Roeder
Notary Public, State of Indiana
St. Joseph County
My Commission Expires  _11-04-06_

STATE OF INDIANA  )                    IN THE ELKHART SUPERIOR COURT NO. 5
                  ) SS:
ELKHART COUNTY  )                      CAUSE NO. 20D050010DR640

EXHIBIT  2.B

## AFFIDAVIT OF BIAS AND PREJUDICE

Comes now (affiant's name) _ROXANNE VARGA_ , of (affiant's
address) _409 TURNBERRY AVE., BRISTOL, IN 46507_ , being duly sworn
upon his/her oath, states that (s)he believes the Honorable Rex L. Reed, of Kosciusko
Circuit Court, is biased and prejudiced against Dr. Amir H. Sanjari, Respondent in
the above captioned case. This prejudice, by extension and consequence, is also
perpetrated against Dr. Sanjari's two minor children.

The undersigned arrived at this conclusion by witnessing Special Judge Reed's
conduct of the case during a full day's court hearing.

**Roxanne Varga  (AFFIANT)**

## VERIFICATION AND AFFIDAVIT

Before me, the undersigned authority, personally came and appeared the
affiant named below, who, being first duly sworn upon oath, stated that she has
read the above and foregoing document and knows the contents thereof, and that all
statements of fact contained therein are true.

**Roxanne Varga  (AFFIANT)**

Subscribed and sworn to before me, this _11th_ day of July 2004.

**NOTARY PUBLIC**
**Address of notary:**

Denis J Roeder
Notary Public, State of Indiana
St. Joseph County
My Commission Expires _11-04-06_

STATE OF MASSACHUSETTS    }
                          } ss.:
COUNTY OF  Essex          }

On this  8  day of  September, 2005, before me personally appeared Amir
H. Sanjari, herein and made oath that he has read the foregoing Complaint by him
subscribed and knows the contents thereof and that the same is true of his own
knowledge, except as to those matters that state to be based on information and belief,
and as to those matters he believes them to be true.

_____
Amir H. Sanjari

Subscribed and sworn to before me

on this  8  day of  September, 2005

Maria S. Martellucci
Notary Public  9/8/5
Maria S. Martellucci

Maria S. Martellucci
Notary Public
My Commission Expires May 2, 2008
Commonwealth of Massachusetts

31

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true copy of the above document is served upon

ALISON GRATZOL (by Counsel),
JOHN GRATZOL (by Counsel),
MAX K. WALKER, JR. (by Counsel),
LOU ANN TODD (by Counsel),
ELKHART SUPERIOR COURT 5 OF STATE OF INDIANA
Steve Carter, Attorney General of State of Indiana (Representing State Of Indiana &
Indiana Courts),
JUDGE REX L. REED

by mail on September 08, 2005

Amir H. Sanjari
In propria persona
#18 Dale Street
Unit 4-E
Andover
Massachusetts 01810
(270) 268-3086